IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

OCT - 9 2020

CLERK, U.S. DISTRICT COURT
By_____4:30pm ____
Deputy

DAWN HERNDON,
    Plaintiff,

vs.

**4-20CV1129-P**

CASE NO.: _____

Bureau of Prisons,
Jody R. Upton - Warden FMC Carswell,
Charles S. Samueals, Jr. Former Director -
    Bureau of Prisons,
Thomas R. Kane - Former Acting Director-
    Bureau of Prisons,
Mark S. Inch, - Former Director -
    Bureau of Prisons,
Hugh J. Hurwitz - Former Acting Director -
    Bureau of Prisons,
S. Mercardo - Clinical Director -
    FMC Carswell,
Charles G. Langham - Clinical Director -
    FMC Carswell,
Raul Campos, Jr. - Asst Warden -
    FMC Carswell,
Mr. Cohen, Asst Warden - FMC Carswell,
Janet Shackelford, Linda Godfrey,
Mrs. LeBlanc, William Pentagraff,
S.R. Grant, Mr. Cotrell, Kwang Kim,
Mr. Campbell, TIna Kinney, Irma Brown,
Catina Friday, Amy M. Boulware,
Lieutenant Jones, S. Bass, Mr. Downing,
Mr. Garcia - Asst Health Services Administrator,
Ms. McMannus - Health Services Administrator,
J. Davidson, Dr. Jowdy, Mr. Blair, Ben Doe,
Mr. Ackley - Asst Health Services Administrator,
J.F. Caraway, Ian Connors, Officer Craig,
Officer Savage, Officer Rodriguez,
UNT Health Patient Services,
United States Public Health Services,

    Defendants.

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DAWN HERNDON,
    Plaintiff,

vs.

                                        CASE NO.: _____

BUREAU OF PRISONS, ET AL.
    Defendants.

## COMPLAINT

       Plaintiff, Dawn Herndon, pro se, brings this Complaint for violation of civil rights pursuant to 42 U.S.C. 1983 against the Bureau of Prisons and the named Defendants, who are employees of the Bureau of Prisons, and therefore alleges as follows:

### JURISDICTION AND VENUE

    1.     This action arises under the Fourth, Eighth and Fourteenth Amendments of the United States Constitution and the laws of the State of Texas, the Civil Rights Act pursuant to Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), American's with Disabilities Act and § 504 of the Rehabilitation Act of 1973 for deliberate indifference to Plaintiff's healthcare. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343 and the aforementioned statutory and constitutional provisions. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events that give rise to the claims occurred within in the Northern District of Texas.

    2.     Supplemental jurisdiction is conferred upon this Court for any state related claims pursuant to 28 U.S.C. § 1367.

    3.     Dawn Herndon has exhausted all administrative remedies available to her prior to bringing this lawsuit within the meaning of the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a).

    4.     This Court has authority pursuant to Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), American's with Disabilities Act  and § 504 of the

1

Rehabilitation Act of 1973 to award appropriate actual, consequential, compensatory and punitive damages, as has authority under 42 U.S.C. § 1988 to award attorneys fees and costs, should this Court appoint an attorney to Plaintiff in this case, to successful civil rights plaintiffs.

PARTIES

5.      Plaintiff, Dawn Herndon, was incarcerated at FDC Miami from April 14, 2015 through August 18, 2015; at Oklahoma Federal Transfer Center from August 18, 2015 through September 1, 2015 at Carswell Federal Medical Center from September 1, 2015

6.      Defendant Bureau of Prisons (hereafter "BOP"), a political subdivsion of the United States of America, subject to suit for negligence.  Additionally, as a federal/public entity, it is subject to suit for damages pursuant to Title II of the Americans with Disabilities Act and Rehabilitation Act of 1973.

7.      Defendant Charles E. Samuels was, during times relevant, is the Director of the Bureau of Prisons, from December 21, 2011 to January 9, 2016, while Plaintiff was in custody of the BOP, and was responsible for the actions of the employees, which actions include the overall medical and dental care of the inmates while in the custody of the Bureau of Prisons.   He is being sued in his official capacity.

8.      Defendant Thomas R. Kane was, during times relevant, is the former Acting Director of Bureau of Prisons, from January 10, 2016 to September 17, 2017,  while Plaintiff was in custody of the BOP, and was responsible for the actions of the employees, which actions include the overall medical and dental care of the inmates while in the custody of the Bureau of Prisons.  He is being sued in his official capacity.

9.      Defendant Mark S. Inch, during times relevant, is the former Director of Bureau of Prisons, from September 18, 2017 to May 18, 2018, while Plaintiff was in custody of the BOP, and was responsible for the actions of the employees, which actions include the overall medical and dental care of the inmates while in the custody of the Bureau of Prisons.  He is being sued in his official capacity.

10.      Defendant Hugh J. Hurwitz, during times relevant, is the former Acting Director of Bureau of Prisons, from May 2018 to August 19, 2019, while Plaintiff was in custody of the

2

BOP, and was responsible for the actions of the employees, which actions include the overall medical and dental care of the inmates while in the custody of the Bureau of Prisons. He is being sued in his official capacity.

11.     Defendant S. Mercardo MD was, during all times relevant, an employee or agent of Defendant BOP who worked as a Clinical Director at Carswell Federal Medical Center (hereafter "FMC Carswell") or and was responsible for the actions of the medical staff employed under his direction. He is sued in his official capacity and his individual capacity.

12.     Defendant Charles G. Langham, M.D. was, during all times relevant, an employee or agent of Defendant BOP who worked as the Clinical Director at FMC Carswell and was responsible for the actions of the medical staff employed under his direction. He is sued in his official capacity and his individual capacity.

13.     Defendant Jody R. Upton was, during all times relevant, an employee of Defendant BOP who worked as the Warden at  FMC Carswell and was responsible for all correctional officers, administrative staff and medical staff employed at FMC Carswell, as well as, being responsible for the overall medical and dental care for all inmates in his facility. He is sued in his official capacity and his individual capacity.

14.     Defendant Raul Campos, Jr. was, during all times relevant, an employee of Defendant BOP who worked as the Assistant Warden of Medical at FMC Carswell and was responsible for all correctional officers, adminstrative staff and medical staff employed at FMC Carswell. He is sued in his official capacity and his individual capacity.

15.     Defendant Mr. Cohen was, during all times relevant, an employee of Defendant BOP who worked as the Assistant Warden of Programs at FMC Carswell and was responsible for all correctional officers and adminsrative staff employed at FMC Carswell. He is sued in his official capacity and his individual capacity.

16.     Defendant Janet Shackelford, MD  was, during all times relevant, an employee of Defendant BOP who worked as a Medical Doctor at FMC Carswell and was responsbile for the medical care of Plaintiff. She is sued in her official capacity and her individual capacity.

17.     Defendant  Linda  Godfrey  was,  during  all  times  relevant,  an  employee  of

3

Defendant BOP who worked as a Unit Counselor at FMC Carswell.  She is sued in her official capacity and her individual capacity.

18.     Defendant Mrs. LeBlanc was, during all times relevant, an employee of Defendant BOP who worked as a Counselor at FMC Carswell.  She is sued in her official capacity and her individual capacity.

19.     Defendant Wiliam Pentagraff was, during all times relevant, an employee of Defendant BOP who worked as the Counselor at FMC Carswell.  He is sued in his official capacity and his individual capacity.

20.     Defendant S.R. Grant was, during all times relevant, an employee of Defendant BOP who worked as the Unit Manager at FMC Carswell.  He is sued in his official capacity and his individual capacity.

21.     Defendant Mr. Cottrel was, during all times relevant, an employee of Defendant BOP who worked as the Unit Manager at FMC Carswell.  He is sued in his official capacity and his individual capacity.

22.     Defendant Kwang Kim, RD was, during all times relevant, an employee of Defendant BOP who worked as a Nutrionist at FMC Carswell.  He is sued in his official capacity and his individual capacity.

23.     Defendant Mr. Campbell was, during all times relevant, an employee of Defendant BOP who worked as Registered Nurse / Director of Nursing / Acting Health Services Administrator at FMC Carswell.  He is sued in his official capacity and his individual capacity.

24.     Defendant Tina Kinney was, during all times relevant, an employee of Defendant BOP who worked as a Registered Nurse and was in charge of scheduling out of facility medical appointments and procedures at FMC Carswell.  She is sued in her official capacity and her individual capacity.

25.     Defendant Irma Brown was, during all times relevant, an employee of Defendant BOP who worked as a   Registered Nurse / Assistant Director of Nursing at FMC Carswell.  She is sued in her official capacity and her individual capacity.

4

26.     Defendant Catina Friday was, during all times relevant, an employee of Defendant BOP who worked as a  Registered Nurse / Assistant Health Services Administrator at FMC Carswell.  She is sued in her official capacity and her individual capacity.

27.     Defendant Amy M. Boulware was, during all times relevant, an employee of Defendant BOP who worked as a Unit Manager at FMC Carswell.  She is sued in her official capacity and her individual capacity.

28.     Defendant Lieutenant Jones was, during all times relevant, an employee of Defendant BOP who worked as a  Lieutenant at FMC Carswell.  She is sued in her official capacity and her individual capacity.

29.     Defendant S. Bass was, during all times relevant, an employee of Defendant BOP who worked as a Corrections Officer at FMC Carswell.  She is sued in her official capacity and her individual capacity.

30.     Defendant Mr. Downing was, during all times relevant, an employee of Defendant BOP who worked as a Director of Disease Control at FMC Carswell.  He is sued in his official capacity and his individual capacity.

31.     Defendant Mr. Garcia was, during all times relevant, an employee of Defendant BOP who worked as a Registered Nurse / Assistant Health Services Administrator at FMC Carswell.  He is sued in his official capacity and his individual capacity.

32.     Defendant Ms. McMannus was, during all times relevant, an employee of Defendant BOP who worked as a  Health Services Administator at FMC Carswell.  She is sued in her official capacity and her individual capacity.

33.     Defendant J. Davidson was, during all times relevant, an employee of Defendant BOP who worked as a Unit Counselor at FMC Carswell.  He is sued in his official capacity and his individual capacity.

34.     Defendant Doctor Jowdy was, during all times relevant, an employee of Defendant BOP who worked as a Medical Doctor at Carswell Federal Medical Center (hereafter "Carswell").  He is sued in his official capacity and his individual capacity.

35.     Defendant Mr. Ackley was, during all times relevant, an employee of Defendant BOP who worked as a Assistant Health Services Administrator at FMC Carswell.  He is sued in his official capacity and his individual capacity.

36.     Defendant UNT Health Patient Services was, during all times relevant, an agent of Defendant BOP who was in charge of scheduling procedures and outside doctor appointments for inmates.

37.     Defendant Mr. Blair was, during all times relevant, an employee of Defendant BOP who worked as a Unit Case Manager at FMC Carswell.  He is sued in his official capacity and his individual capacity.

38.     Defendant Ben Doe was, during all times relevant, an employee of Defendant BOP who worked as a Administrative Remedy Coordinator at FMC Carswell.  He is sued in his official capacity and his individual capacity.

39.     Defendant J.F. Caraway was, during all times relevant, an employee of Defendant BOP who worked as a Regional Director, Grand Praire South Central Regional Office for the Bureau of Prisons.  He is sued in his official capacity and his individual capacity.

40.     Defendant Ian Connors was, during all times relevant, an employee of Defedant BOP who worked as Adminstrator Nation Inmates Appeals, Washington DC for the Bureau of Prisons.  He is sued in his official capacity and his indvidual capacity.

41.     Defendant Officer Craig was, during all times relevant, an employee of Defendant BOP who worked as a Corrections Officer at FMC Carswell.  He is sued in his official capacity and his individual capacity.

42.     Defendant Officer Savage was, during all times relevant, an employee of Defendant BOP who worked as a Corrections Officer at FMC Carswell.  He is sued in his official capcity and his individual capacity.

43.     Defendant Officer Rodriguez was, during all times relevant, an employee of Defendant BOP who worked as a Corrections Officer at FMC Carswell.  He is sued in his official capacity and his individual capacity.

44.     Defendant, United States Public Health Services was, during all times relevant, an agent of the Defendant BOP who employed workers who worked at FMC Carswell.

PRELIMINARY STATEMENT

45.     At all times relevant, each named Defendant was employed by or an agent of the Bureau of Prisions and acted under the color of law to deny Plaintiff proper medical care for her colostomy and her colostomy reversal despite having had actual knowledge that Plaintiff had a colostomy bag that needed to be removed as it was causing extreme and unnecessary pain and suffering to Plaintiff. This case involves senseless acts against Plaintiff at the hands of the Bureau of Prisons, it's employees and agents.   Plaintiff was received in the Bureau of Prisons on April 6, 2015.  At that time she had a history of colon cancer resulting in a colostomy.  A colostomy is a procedure that creates an opening in the abdominial wall.  The end of the large intestine, which is the colon, is brought through the opening to form a stoma.  A stoma is an artificial opening that is made in an organ in the body.  A flange is attached to the abdomen and a colostomy bag is attached to the flange, allowing stool/feces to pass which it is unable to naturally do due to the injury.  In addition to the colostomy, Plaintiff suffers from herinated discs in her neck and back, neuropathy in her hands and feet, bi-lateral arthritis in her hips, as well as various other medical issues.  All of which were documented prior to Plaintiff's incarceration and again when she was received into the Bureau of Prisons.

46.     At all times relevant, each named Defendant denied treatment with deliberate indifference to Plaintiff's serious medical needs knowing that denying a colostomy reversal posed a substantial and excessive risk to Plaintiff's health as well as prolonged pain and suffering.

47.     Each named Defendant's failure to provide treatment was not based on legitimate differences in medical opinion but on deliberate indifference and conscious disregard for Plaintiff's serious medical needs.

48     The Defedants S. Mercardo, Clinical Director and Charles G. Langham, Clinical Director at FMC Carswell, in particular, denied the colostomy reveral because it was too costly

7

and the BOP would not pay for the reversal.

49.     The named Defendants at each facility failed to ensure Plaintiff received appropriate medical care, and further, punished Plaintiff by retaliation for attempting to advocate for herself and asserting her constitutional rights.

50.     Each defendant acted under color of law to deprive Plaintiff of her constitutionally protected right to be free of cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment.

51.     As a result of this delay in providing treatment, Plaintiff continued to have pain, discomfort and stress associated with controlling bowel movements even after the reversal performed.

52.     Plaintiff was an inmate in the care and custody of the Bureau of Prisons. She was designated and housed at FMC Carswell from September 1, 2015 until her release to home confinement on February 19, 2019.  Prior to her ultimate transfer to FMC Carswell she was housed at the Federal Detention Center Miami (hereinafter "FDC Miami") and Oklahoma Transfer Center (hereinafter "OTC Oklahoma").

53.     Plaintiff was transferred from FDC Miami via US Marshall on a BOP plane to OTC Oklahoma without any colosstomy supplies to properly clean and care for her colostomy.

54.     Upon arrival to OTC Oklahoma approximately 10-12 hours after leaving FDC Miami, Plaintiff was placed in a holding cell with all the other female inmates and was forced to empty and clean her colostomy bag in front of all the other female inmates.   Plaintiff was given none of her clean ostomy supplies to clean or care for her colostomy and her clothes were soiled from leakage of feces from the bag that was over-flowing.  She had to clean and empty the bag in a filthy sink and toilet that only separated her and the other inmates by a half wall where they could see and smell the feces that was being dumped.  This was both humiliating and embarrassed Plaintiff.

55.     Plaintiff was eventually given some of her supplies by the medical officer and sent to her assigned cell in the general housing unit where she was held for 2 weeks before

being transferred to FMC Carswell.  Upon departure to FMC Carswell, Plaintiff was made to put the supplies she was given in the trash.

56.     On September 1, 2015, Lieutenant Jones, Officer Bass and Officer John Doe were the officers in charge of transporting Plaintiff from OTC Oklahoma to FMC Carswell.  While waiting to depart from OTC Oklahoma to FMC Carswell, Plaintiff and the rest of the inmates were placed in a holding cell for over three hours while being processed.  Plaintiff had no way of caring for her colostomy (open wound), as she had no colostomy supplies to change or clean her colostomy bag.  Plaintiff was forced to empty her feces in an open toilet and rinse it in a filthy sink area in front of approximately thirty other inmates and had no way to clean the bag before reattaching the bag to her flange.  This humiliated and embarrassed Plaintiff.  Plaintiff repeatedly asked Officers Bass and John Doe, as well as Lieutenant Jones, if they had retrieved her medical supplies for her colostomy from the medical department and she was told that it was being taken care of.  Once all inmates were on the bus and ready to be transported from OTC Oklahoma to FMC Carswell, Plaintiff again asked Lieutenant Jones if she would be retrieving her colostomy supplies and Lieutent Jones replied that they would not be retrieving the medical supplies and that whatever medical supplies she needed, they would have when she got where she was going.

57.     Upon arrival to FMC Carswell, late in the day on September 1, 2015, Plaintiff did not have any of her colostomy supplies needed to care for her colostomy and was again made to change the bag full of feces into an open toilet area and wash the bag in a filthy sink, this again all taking place in front of other inmates and left with no way to properly wash or clean the bag or colostomy site prior to putting the used colostomy bag back on the flange.

58.     Plaintiff informed Sherri McNeely, the nurse who processed her into FMC Carswell, that she did not have her medical supplies and that Lieutenant Jones and Correctional Officers Bass and John Doe, all refused to obtain them from the medical department at OTC Oklahoma.

59.     When Plaintiff was received into custody it was well-documented that she had a pre-existing serious medical history of colon cancer, herinated and bulging discs in her neck and back, arthritis in her hips and neuropathy in her hands and feet.

60.     When Plaintiff entered FMC Carswell, it was obvious to the defendant BOP, it's

employees and agents that a person with a disability like Plaintiff, being that she had a colostomy and was required to wear a colostomy bag and was not assigned to an ADA Complaint room would be deprived of rights secured by the ADA and the Rehabilitation Act and would be deprived of rights secured by the Fourteenth Amendment to the Constitution of the United States of America.

61.    Plaintiff was not assigned to an ADA Compliant housing unit when she entered FMC Carswell.  Instead, Plaintiff was assigned to a general population housing unit that only had general population showers, toilet stalls and sinks that were used by over 275 other inmates that were housed on the same unit as Plaintiff.

62.    Following her assignment to this Non-ADA Complaint housing unit, Plaintiff requested from both medical staff and correctional staff her need to be assigned to an "ADA Compliant" housing unit so that she could properly care for her colostomy in a more sanitary place and out of the sight of the other inmates.  Approximately 8-9 days after her arrival at FMC Carswell, Plaintiff was assigned a medical grade of chronic care 3 and moved to the medical housing Unit CC5 which was designated for chronic care inmates at FMC Carswell.

63.    There were available rooms that would be ADA Compliant, with showers and bathrooms, on Unit CC5, but the BOP, it's employees and agents refused and/or denied Herndon an ADA Compliant room to care for her colostomy (open wound) which is a serious medical condition.

64.    The counselor on the medical unit where Plaintiff was being house refused to abide by the Medical Duty Status form that was issued by Herndon's assigned doctor at Carswell and informed Herndon "I do not cater to medical needs", when Herndon requested a room with a bathroom so that she could properly care for her colostomy in a more sanitary place and have at least some form of privacy while cleaning and changing her colostomy appliance/bag.

65.    Plaintiff's surgeon, pre-incarceration and the colorectal surgeon that the BOP referred Plaintiff to, both informed Plaintiff that her colostomy could be reversed through surgery, which would include removal of the bag.  The benefits of reversal include the ability to control bowel movements and to address the pain, discomfort and stress experienced by Plaintiff.  Further, the longer the rectum has been unused, the longer it takes to get back into

10

sync after a reversal.

66.    Plaintiff advised the Warden Upton, Medical Director Mercado and Medical Director Langham of the need for her colostomy reversal.  When her primary physician and the BOP appointment colorectal surgeon recommended the reversal surgery, on more then one occassion the BOP, it's employees and agents denied the surgery and the BOP would not pay for the reversal surgery.

67.    Plaintiff filed grievances against the BOP, it's employees and agents due to the denial of her colostomy reversal and therefore the BOP's employees retaliated against her by subjecting Plaintiff to inhumane conditions by refusing to accomodate her need for an ADA Complaint room with a shower and bathroom to care for her colostomy, when all the Plaintiff really wanted was to have her colostomy reversed.

68.    Notwithstanding her complaints and grievances, plaintiff remained in a non ADA Complaint room at FMC Carswell until she finally had a colon resection on August 28, 2016. There after, Plaintiff developed urinary and fecal incontinuance issues, as a result of the colon resection, and was again placed in a non-ADA Compliant general popluation housing unit at FMC Carswell until she was released.

69.    Once in the custody of the BOP Plaintiff's colostomy began to deteriorate and cause her extreme pain and stress because she did not have the proper means to clean and care for her colostomy (open wound), as she did not have a sanitary area that would allow her to completely remove the colostomy flange, shower without the flange and bag and clean the peristomal skin surrounding the ostomy and then allow the area to breath before reapplying a new colostomy flange and bag.

70.    The BOP neglected to send Herndon to a colorectal specialist for over 8 months after her incarceration, causing undue extreme pain and suffering at the hands of the BOP due to inadequate training and medical care for colostomies.

71.    Plaintiff was sent to Jackson Memorial Hospital where where she was evaluated for severe stomach pain.  A CAT Scan was performed and it was noted that there was a mass in her lower left abdomen.  Plaintiff was made to endure excruiating pain and suffering because

11

the BOP failed to address the mass for over 8 months, at which time Herndon's assigned primary doctor at FMC Carswell, Janet Shackleford addressed the mass.

72.    Plaintiff was denied proper nutrition for her dietary issues at FMC Miami where she was housed from April to August and eventually transferred to Carswell in September, where she was still denied the proper diet to compensate for her dietary issues related to a colostomy.  Nutritionist Kwang Kim, RD refused to review the dietary recommendations for a person with a colostomy or provided Herndon with extra nutrition at the request of her primary physician, Janet Shackelford.

73.    Plaintiff was placed in general population when she was received at Carswell for approximately 8 days.  It was only after Plaintiff made medical aware that she had a colostomy and need a sanitary shower to care for her colostomy, that she was moved to the Chronic Care Unit CC5 (hereafter "CC5") for housing.  When Plaintiff was moved to CC5 she was placed in a room with 13 other inmates and was only given access to general showers and bathrooms with no place to clean and care for her colostomy.  When she asked her Unit Counselor, Linda Godfrey, if she would be moved to a room with a bathroom, Linda Godfrey replied "I don't cater to medical needs" and refused to move Plaintiff into a room with a private bathroom where she could care for her colostomy.

74.    Plaintiff was denied her proper colostomy supplies for over 9 months which caused ulcers on the stoma and burning to the peristomal skin surrounding the stoma.  The lack of proper cleaning of the stoma and sounding skin caused excruicating and undue pain and suffering.  Plaintiff was prescribed incorrect skin barrier wipes (Vionex wipes which contained alcohol) to clean the stoma and peristomal skin surrounding the stoma which caused the burning to the stomas and peristomal skin surround the stoma for over 9 months.  It wasn't until 9 months after Herndon was received into BOP's custody that she was taken to a colorectal specialist, Dr. Lori Gordon.  Plaintiff was advised by the surgeon that the Vionex wipes contained alcohol and therefore is was causing the burning and irriatation to the stoma and surrounding peristomal skin.  Dr. Gordon provided two boxes of the correct skin barrier wipes to Counselor who escorted Plainitff to her appointment.  Plaintiff later found that the medical supply department stocked the correct barrier wipes the entire time that Plaintiff had been in custody, yet she was not given the correct wipes because there was no one on the medical staff at

Carswell that was trained in colostomy care.

75.     It was approximately a year before Plaintiff was provided with a fully functionable irrigator to flush her colostomy, yet she was given no place to irrigate, as the irrigator required access to a shower or bathroom sink and toilet to flush the feces into.

76.     Plaintiff, to this day, is still suffers severe abdomen pain, for which the BOP refused to take care of throughout the almost 4 years that she was incarcerated in the Bureau of Prisons. She is currently treating with a local colorectal surgeon to address the abdomen issues.

77.     Plaintiff endured constant pain and suffering due to the lack of a proper medical bed which ascerbated her existing neck and back injuries. Dr. Charles G. Langham, M.D., the medical director at Carswell, made the decision that Herndon be given 4 extra pillows to in place of a medical bed. Herndon is currently preparing for surgery for a total disc replacement of her 3-4 and 5-6 neck.

78.     After filing multiple administrative remedies, continually requesting assistance from the Warden, Assistant Warden, Clinical Directors, Health Services Adminstrators, Medical Staff and Unit Team for the adequate ADA-Complaint housing with denials each time, Plaintiff's colostomy reversal was performed on August 27, 2016, over 18 months after Plaintiff was received into the care of the Bureau of Prisons.

79.     Plaintiff was taken out to the hosptial for a colostomy reversal on Thursday, August 25, 2016, at which time the surgery had to be delayed due to the fact that Plaintiff was not properly bowel prepped the day before surgery. Plaintiff had already been admistered the first round of anesthesia medicine, at which time she had to ask the guard to not allow them to administer any more until which time as she could speak with the surgeon and inform her that she had not been property prepped for surgery. Once Herndon was able to speak with her surgeon, Dr. Lori Gordon to inform her that she was not properly prepped for surgery. The surgeon admitted Plaintiff to the hospital, prepped her for surgery the following day and performed the reversal surgery on Saturday.

80.     Immediately after her colostomy resection surgery, Plaintiff had decreased vision in both eyes. Upon return to FMC Carswell from the hospital, she informed medical staff

that she was having issues with her eyes, where in she could not read anything in print without the use of readers.  Plaintiff needed to use 350 reading glasses in order to read.  Over time her vision began to deteriorate.   On November 25, 2016 Plaintiff reported to Mr. Ackley, Assistant Health Services Administrator who came to her unit, that she was having issues with her left eye where in she was seeing blurriness and black dots in her left eye.   She sent emails to Mr. Ackley who indicated that he would follow-up with her.

81.    On December 3, 2016 Plaintiff's left side of her face had become swollen and her left eye was bright red and swollen shut.  She went to the Corrections Officer Craig who was on duty in her unit and requested to be seen by Med-Surge, he indicated that he contacted Med-Surge and they refused to see Plaintiff.   Plaintiff then went to the next officer on duty, Corrections Officer Savage (hereinafter "Savage") at approximately 3 a.m and again asked to be seen by Med-Surge, again she was denied, Savage said that she should come back after at 7 am after Med-Surge had their shift change.  He stated that if they wounn't see me last night, it's the same shift and they won't see me know.  Plaintiff again went to Savage at approximately 6 am in excruciating pain and her eye was completely swollen shut.  Again he told her to come back after 7 am.   When Plaintiff went back to see Officer Savage, he had already left and Corrections Officer Rodriguez was now on duty.  Plaintiff again asked to go to Med-Surge and Officer Rodriguez told her he would not call, she would have to wait and go to sick call in the morning.  Plaintiff proceeded to change and went to the Lieutenants office where she spoke with Lieutenant Lamkin who sent her directly to Med-Surge.   Plaintiff was seen by the contracted doctor on Med-Surge, given and ice pack and Ibuprofen and sent back to her unit with instructions to go to sick call in the am.

82    Plaintiff went to sick call the following morning at 6:00 am on December 5, 2016.  While waiting to see her primary doctor there was an inmate recall.  Plaintiff then went to Ms. McMannus, the Health Services Administrator, who was in Mainline at the chow hall and she sent her directly back to clinic with instructions to Nurse Kinney to have Plaintiff seen by Dr. Bollinger.  Dr. Bollinger determined that he was not qualified to diagnose what was wrong with Plaintiff's eye and sent her immediately to the emergency room at JPS Hospital were Plaintiff was treated by the emergency room doctor, who believed that Plaintiff may have a detached retina and discharged her to JPS Eye Clinic for further evaluation.  Plaintiff was eventually sent

14

back to the facility with a presciption that was to be started immediately, as they swelling was so bad, they could not get a good look in the eye and Plaintiff would need to come back once the medicine was applied and the swelling went down.

83.     After Plaintiff's colostomy reversal,  she developed severe bladder and fecal incontinence, leaving her with little to no control over her bladder or bowel movements.  These symptoms persisted almost immediately after her colostomy reversal  and continued until her release from Carswell.  Due to the lack of control over her bladder and bowel movements, Plaintiff was limited to how far away from her unit she ventured, as she needed to be near a restroom at all times, therefore, on a daily basis, she spent most of the day in her cell.   The incontinence Plaintiff had made it almost impossible for her get to the chow hall to enjoy the opportunity of meals on a daily basis.  Due to her lack of control over her bladder and bowels, Plaintiff soiled her clothes and bed linens on a regular basis and did not have the availability to clean her linens or clothes when needed due to the overcrowding of her unit and the lack of availability of wash times, due to the overcrowding.

84.     Plaintiff was given no other alternative but to purchase the majority of her food from commissary so that she could prepare meals in her room so that she would be close to a restroom after eating, because she would almost immediately bowel movement when she consumed food, which she had no control over.  Her constant complaints to medical staff and the administrative staff, as well as adminstrative remedies that were filed are noted in Plaintiff's prison medical records.

85.     Notwithstanding the severity of Plaintiff's symtoms and her ability to care for herself, the BOP, it's employees and agents continued to house Plaintiff in general population in a cell that was inadquate to meet her medical needs.  Moreover, the BOP, it's employees and agents continued to refuse Plaintiff the appropriate means to wash her soiled clothes and bedmlinens on a regular basis and any request for assistance from the BOP employees, when she had the accidents and misaps, were denied.

87.     Plaintiff continually experiences severe abdominal pain, hernias, urinary and fecal incontinence, neck and back pain and other issues that were not addressed or resolved by the BOP, it's employees or agents at FMC Carswell.

15

89.     Plaintiff was the only inmate with a colostomy that was not assigned to an ADA Complaint room with a shower and bathroom.

90.     Plaintiff was given Medical Duty Status (hereinafter "MDS") two separate times by two her treating physicians for a room with a bathroom, first on November 6, 2015 by Dr. Shackelford and she was directred by Clinical Director S. Mercado to remove same from Plaintiff's MDS and again on June 23, 2017 by Dr. Bolinger, both times Plaintiff was denied a room with a bathroom and the physicians were instructed by Health Services Adminstration and the Clinical Directors to remove the bathroom requirement from Plaintiff's MDS.

91.     Plaintiff continually requested, from the Warden, Assistant Warden, Medical Director, Health Services Administrators, Counselors, Case Managers and Unit Managers, as well as filing grievances, the need for a room with a shower and a bathroom, in addition to the availability to have more wash times to clean her soiled linens and clothes, because of accidents and mishaps caused by her urinary and bowel incontinence issues, her requests were denied at every level.

92.     Plaintiff was made to cope with the situations of having the repeated problems with other cellmates who were "put out" over Plaintiff's frequent need to defecate and urination soiling her clothes and linens and the staunch odor that it caused.  This was both dehumanizing and embarrassing for Plaintiff to have to deal with this on an almost daily basis.

93.     Plaintiff had occasions where she urinated or defecated on herself while confined to her cell for count times.  In addition, she had instances where she had to stand in line to wait for the toilet and again soiled her clothes due to the inability to control the urinating and fecal incontinence.

94.     Notwithstanding the severity of Plaintiff's symptoms and her inability to control her incontinence, the BOP and it's employees continued to house Plaintiff in a cell that was inadquate to meet her medical needs.  Moreover, the BOP and it's employees continued to deny Plaintiff's pleas for assistance for assistance in wash times for the clothes and linens that were soiled due to Plaintiff's uncontrolable incontinence or the simple need for a restroom to accomodate her disability.

16

95.     Notwithstanding any of this information, and all of the medical records obtained through the medical providers, Plaintiff was continually denied an ADA Compliant room with a bathroom.

96.     During the entire time from April 6, 2015 up through her release to home confinement on February 29, 2019, Herndon was denied ADA Compliant housing to accomodate her serious medical needs.

97.     Plaintiff had a know history of serious medical issues which included her need for a colostomy bag, all aspects of her daily functioning.  Once her colostomy was reversed she developed urinary and fecal incontinence, again aspects of her daily functioning, which issues the BOP and it's employees chose to ignore.

98.     Plaintiff filed mulitple administrative remedies during her incarceration in order to get medical treatment and repeatly asked to be housed in a room with a bathroom so that she could tend to her her medical issues.  The last Adminstrative Remedy was denied on October 10, 2010, and it simply stated that Plaintiff should continue compliance with her medication regimen and medical plan of care in order to obtain optimal results.

99.     By denying Plaintiff's Administrative Remedies she was left in general population with no way to care for her incontinence issues and she was never afforded an ADA Compliant room to properly take care of her medical issues.

## COUNT I - NEGLIGENCE

100.     Plaintiff adopts, realleges and reaffirms all allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein and further states as follows:

101.     The BOP, it's employees and agents assumed a non-delegable duty of care to all of its inmates incarcerated at FMC Carswell to use reasonable care to insure that its inmates were properly housed for their own safety and well being based on their known medical conditions.

102.     The BOP through its employees and agents, breached this duty of care and failed to act reasonably when housing Plaintiff.

103.     The BOP, it's employees and agents failed to perform its duty to use reasonable care to ensure that Plaintiff was properly housed for her safety and well being in the following

17

ways.

a)      Failing to assign Plaintiff a proper medical grade as was required given her serious medical condition and her resulting symptomology;

b)      Failing to transfer Plaintiff to FMC Carswell in a timely manner so that she could be housed in a federal prison medical facility such as Unit CC5 at FMC Carswell;

c)      Upon failing to transfer Plaintiff to a federal prison medical facility, the BOP, it's employees and agents failed to house Plaintiff in an ADA Complaint room so that she would have a sanitary bathroom with a shower to properly care for her colostomy, which is a serious medical need;

d)      Upon Plaintiff's arrival to FMC Carswell, the BOP, it's employees and agents failed to adequately accommodate Plaintiff in an ADA Compliant room that contained a sanitary bathroom with a shower so that she could properly clean and care for her colostomy (open wound);

e)      Upon the failing to provide Plaintiff with an ADA Complaint room, Plaintiff had no means to properly shower with her colostomy appliance and bag off, clean and care for her colostomy, in turn she developed ulcers on her stoma and leaving her peristomal skin surrounding the stoma raw which caused her unnecessary excruciating pain and suffering;

f)      Upon the failing to provide Plaintiff with a sanitary and convenient shower and toilet to clean her colostomy, irrigate and empty her feces from her colostomy bag;

g)      Upon failing to provide bio-hazard containers for Plaintiff to dispose of her soiled colostomy bags and unsanitary conditions;

h)      Upon failing to provide humane conditions for Plaintiff to clean her colostomy and change her colostomy flange and bag;

i)      Subjecting Plaintiff to endure the odor of leakage of the bags around inmates and while eating;

j)      Upon failing to provide Plaintiff with immediate access to shower and bathroom for cleansing in the event of "accidents, leakage or mishaps";

k)      Upon the undue delay in providing Plaintiff with the prescribed colostomy irrigation supplies and equipment to irrigate and eliminate excess waste;

l)      Upon failing to provide Plaintiff the facilities and times for private irrigation;

m)      Failing to investigate the type of housing that Plaintiff required in order to accommodate her disability;

n)      Failing to consider Plaintiff's particular disability when making housing assignment;

o)      Failing to provide Plaintiff with a sanitary shower to clean and change her colostomy flange and bag;

p)      Failing or refusing to provide Plaintiff with isolated area with a sink, toilet or shower, out of view of other inmates to clean and care for her colostomy;

q)      Failing to provide bio-hazard containers for the deposal of the feces filled colostomy bags endangering Plaintiff and other inmates;

18

r)      Creating safety and security issues between Plaintiff and other inmates due to the contents of the colostomy bag with raw feces;

s)      Failing to properly house Plaintiff in light of her disability;

t)      Failing to provide a diet that would accommodate Plaintiff's nutritional needs due her colostomy;

u)      Failing to provide Plaintiff with garbage bags to dispose of her colostomy bag full of raw feces, as it is against BOP policy;

v)      Failing to reasonably accommodate Plaintiff's serious disability;

w)      Failing to provide wash times for Plaintiff to clean her soiled linens and clothing;

x)      Failing to provide Plaintiff with a proper medical bed due to her severe pre-existing neck and back issues;

y)      Failing to approve needed surgery recommended for Plaintiff by the colorectal surgeon to relieve severe abdomen pain.   Which surgeon was appointment by the BOP, it's employees and agents to care for Plaintiff.

104.    The BOP, through it's employees and agents failed to perform its duty to use reasonable care to ensure Plaintiff's safety and well being.  As a direct and proximate result of the BOP, it's employees and agent's negligence in this regard, Plaintiff was made to endure cruel and unusual punishment.

105.    The BOP, through it's employees and agents knew and/or should have known Plaintiff's serious disability, and the need for reasonable accommodation with regard to her housing.

106.    As such, it was reasonably foreseeable that Plaintiff would suffer from the inability to properly clean and care for her colostomy because she did not have the ability to remove the flange and properly clean the ostomy and surrounding area, allow same to breath after showering and before reapplying a new flange and bag.  As such, it was further reasonably foreseeable to the BOP and it's employees and agents that such if such reasonable accomodations were withheld from Plaintiff she could seriously suffer injury.

107.    As a result of Plaintiff's mistreatment by the BOP, it's employees and agents she has incurred the following damages which are recoverable by the Plaintiff:

A.      Plaintiff has sustained the following damages:

Physical,  psychological,  emotional  pain  and  suffering,  trauma, humiliation, ridicule, stress, incontinence, digestive and abdominal medical issues directly resulting from the infliction of additional and unnecessary physical, psychological and emotional stress and trauma from; as well as

19

insidious and invidious deliberate discrimination by taking away Plaintiff's necessary reasonable accommodation that was also provided to other, similarly situated prisoners, yet not taking it from the other prisoners; and that the acts and conduct of the BOP, it's employees and agents further constitutes a direct violation of the Plaintiff's Due Process of Law;  Plaintiff continues to suffer today and will most likely continue suffering for the remainder of her life.

Physical and mental pain and suffering from the date of her incarceration and continuing to date and into the unknown future until the medical issues that Plaintiff continues to endure can be resolved, if at all.

WHEREFORE, the Plaintiff demands a jury trial and requests judgment again the Bureau of Prisons, it's employees in their official capacity and their individual capacities and it's agents for damages on behalf of Plaintiff, together with costs of suit and any further relief this Court deems just and proper.

COUNT II -
VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT (DELIBERATE INDIFFERENCE-
REFUSAL TO PROVIDE REASONABLE ACCOMMODATION)

108.    Plaintiff adopts, realleges and reaffirms all allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein and further states as follows:

109.    This Count is a claim for disability discrimination against the BOP, it's employees and agents for violating Title II (Public Entities) of the Americans with Disabilities Act, 42 USC § 12101 et. seq., (hereafter "ADA") which provides in pertinent part at 42 USC §12132:

No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

110.    Title II of the Act prohibits, among other things:

- Limiting a qualified individual's enjoyment of any right, privilege, advantage or opportunity enjoyed by others receiving an aid, benefit or service of any agency; and

- Subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

20

28 C.F.R. §39.130

111.    Plaintiff was disabled as defined at 42 USC §12102(1)(A) as she suffered a physical impairment that substantially limited one or more of her major life activities. Life activities include walking and the operation of major bodily functions, including the bladder. See 42 USC §12102(2)(A) & (B). The determination whether an individual is disabled should be made without considering ameliorative effects of medication or assistive devices. See 42 U.S.C. §12102(4)(E).

112.    Plaintiff was a "qualified individual" as defined at 42 USC §12131(2) which states:

> "Qualified individual" means an individual with a disability who meets the essential eligibility requirements for the receipt of services or the participation and programs or activities provided by the entity (with or without regard to any auxiliary aids or modifications).

113.    The BOP is a federal / public entity falling under the provision of TItle II of the ADA. The BOP's prison at FMC Carswell is a facility, and its operation comprises a program and service for purposes of Title II of the ADA.

114.    The BOP's employees and agents were authorized to act for the BOP when they committed the ADA violations alleged herein.

115.    The BOP's employees and agents accepted the undertaking of acting on behalf of the BOP when they committed the ADA violations alleged herein.

116.    The BOP had control over it's employees and agents when they committed the ADA violations alleged herein.

117.    The ADA violations alleged herein and committed by the BOP's employees and agents, were done while acting in the course and scope of their employ and/or agency with the BOP. As such, the BOP is vicaiously liable for the actions of its employees and/or agents when they committed the ADA violations alleged herein.

118.    Plaintiff alerted the BOP's employees and agents of Plaintiff's need for reasonable accommodation, and Plaintiff's need for a reasonable accommodation was obvious based on Plaintiff's physical appearance and the information provided by Plaintiff's previous physicians and medical records, as well as, the physicians that the BOP referred Plaintiff to while in custody of the BOP.

119.    The BOP's employees and agents knew and/or should have known of Plaintiff's need for a reasonable accommodation in her housing.

120.    The BOP's employees and agents acted intentionally and/or with deliberate indifference to Plaintiff's need for a reasonable accommodation in the following ways:

a)    Failing and intentionally refusing to place Plaintiff in housing that allowed her to safely shower and clean her ostomy/colostomy (open wound), which such housing was necessary to reasonably accommodate Plaintiff's disability;

b)    Failing and intentionally refusing to provide Plaintiff with a room with a shower and bathroom, as well as colostomy irrigation supplies in order to properly irrigate her ostomy and relieve her self of excess feces, when such accomodations were necessary to reasonably accommodate her disability in the absence of proper housing accommodations;

c)    Failing and intentionally refusing to provide Plaintiff with a means washing her soiled clothes and linens when such accommodation was necessary to reasonably accommodate her disability in the absence of proper housing accommodations on the medical unit that had available washers and dryers for such issues;

d)    Failing and intentionally refusing to investigate into what accommodations for Plaintiff would have been reasonable;

e)    Failing and intentionally refusing to consider Plaintiff's particular disability when making her housing assignment;

f)    Failing and intentionally refusing to consider Plaintiff's particular disability when changing her housing assignment after her primary physician prescribed a room with a bathroom based on her disability;

g)    Failing and intentionally refusing to reasonably accommodate Plaintiff's serious disability;

121.    As a direct and proximate result of the BOP's employees and agents failure and intentional refusal to provide Plaintiff with an accommodation for her disability, she suffered unwarranted excruciating pain and suffering, humiliation, embarrassment and cruel and unusual punishment.

122.    As a result of Plaintiff's excruciating pain and suffering, humiliation and embarrassment, she has incurred the following damages recoverable by Plaintiff.

A.    Physical, psychological, emotional pain and suffering, trauma, humiliation, ridicule, stress, incontinence, digestive and abdominal medical issues directly resulting from the infliction of additional and unnecessary physical, psychological and emotional stress and trauma from; as well as insidious and invidious deliberate discrimination by taking away Plaintiff's

necessary reasonable accommodation that was also provided to other, similarly situated prisoners, yet not taking it from the other prisoners; and that the acts and conduct of the BOP, it's employees and agents further constitutes a direct violation of the Plaintiff's Due Process of Law;  Plaintiff continues to suffer today and will most likely continue suffering for the remainder of her life.

Physical  and  mental  pain  and  suffering  from  the  date  of  her incarceration  and  continuing  to  date  and  into  the  unknown  future  until  the medical issues that Plaintiff continues to endure can be resolved, if at all.

WHEREFORE, the Plaintiff demands a jury trial and requests judgment against the BOP, it's employees in their official capacity and individual capacity for damages on behalf of Plaintiff herein, together with attorney's fees, if this Court should appointment an attorney to Plaintiff and costs of suit in this action pursuant to 42 USC §12205 and any further relief this Court deems just and proper.

COUNT III
VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
(DELIBERATE INDIFFERENCE - REFUSAL TO TRAIN)

123.    Plaintiff adopts, realleges and reaffirms all allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein and further states as follows:

124.    This Count is a claim for disability discrimination against the BOP, it's employees and agents for violating Title II (Public Entities) of the Americans with Disability Act, 42 USC § 12132:

No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity.

125.    Title II of the Act prohibits, amount other things:

- Limiting  a  qualified  individual's  enjoyment  of  any  right,

23

privilege, advantage or opportunity enjoyed by others receiving an aid, benefit or service of an agency; and

- Subjecting a qualified individual to discrimination under any program or activity conducted by an agency.

28 C.F.R. §39.130.

126.     Plaintiff was disabled as defined at 42 USC §12102(2) as she suffered a physical impairment that substantially limited one or more of her major life activities, including but not limited to, caring for oneself, showering and using the toilet .

127.     Plaintiff was a "qualified individual" as defined at 42 USC §12131(2) which states:

"Qualified individual" means an individual with a disability who meets the essential eligibility requirements for the receipt of services or the participation and programs or activities provided by the entity (with or without regard to any auxilliary aids or modifications).

128.     The BOP is a federal / public entity falling under the provisions of Title II of the ADA.  The BOP's prison at FMC Carswell is a facility, and its operation comprises a program and service for purposes of Title II of the ADA.

129.     The BOP acknowledged that its employees and agents were authorized to act for the BOP when they committed the ADA violations alleged herein.

130.     The BOP's employees and agents accepted the undertaking of acting on behalf of the BOP when they committed the ADA violations alleged herein.

131.     The BOP had control over its employees and agents when they committed the ADA violations alleged herein.

132.     The ADA violations alleged herein and committed by the BOP's employees and agents, were done while acting in the course and scope of their employ and/or agency with the BOP.  As such, the BOP is vicariously liable for the actions of its employees and/or agents when they committed the ADA violations alleged herein.

133.     Plaintiff alerted the BOP's employees and agents of Plaintiff's need for reasonable accommodation, and Plaintiff's need for a reasonable accommodation was obvious based on Plaintiff's physical appearance and the information provided by by Plaintiff's previous physicians and medical records, as well as, the physicians that the BOP referred Plaintiff to while

in custody of the BOP.

134.    The BOP's employees and agents knew and/or should have known of Plaintiff's need for a reasonable accommodation in her housing.

135.    The BOP's employees and agents acted intentionally and/or with deliberate indifference to Plaintiff's need for a reasonable accommodation in the following ways:

a)      Failing and intentionally refusing to place Plaintiff in housing that allowed her safely shower and clean her ostomy in a sanitary area when such housing was necessary to reasonably accommodate Plaintiff's disability;

b)      Failing and intentionally refusing to provide Plaintiff with a room with a shower / bathroom to irrigate her ostomy which such accommodation was necessary to reasonably accomodate her disability in the absence of proper housing accommodations;

c)      Failing and intentionally refusing to provide Plaintiff with a means to wash her soiled clothes and linens when such accommodation was necessary to reasonably accommodate her disability in the absence of proper housing accommodations;

d)      Failing and intentionally refusing to investigate into what accommodations for Plaintiff would have been reasonable;

e)      Failing and intentionally refusing to consider Plaintiff's particular disability when making her housing assignment;

f)      Failing and intentionally refusing to provide Plaintiff with immediate access to a shower and bathroom for cleansing in the event of "accidents or mishaps";

g)      Failing and intentionally refusing to consider Plaintiff's particular disability when changing her housing assignment after her primary physician prescribed a room with a bathroom based on her disability;

h)      Failing and intentionally refusing to reasonably accommodate Plaintiff's serious disability.


136.    As a direct and proximate result of the BOP's employees and agents failure and intentional refusal to provide Plaintiff with an accommodation for her disability, she suffered unwarranted excruciating pain and suffering, humiliation, embarrassment and cruel and unusual punishment.

137.    As a result of Plaintiff's excruciating pain and suffering, humiliation, embarrassment and cruel and unusual punishment, she has incurred the following damages recoverable by Plaintiff.

A.      Physical, psychological, emotional pain and suffering, trauma, humiliation, ridicule, stress, incontinence, digestive and abdominal medical issues directly resulting from the infliction of additional and unnecessary

25

physical, psychological and emotional stress and trauma from; as well as insidious and invidious deliberate discrimination by taking away Plaintiff's necessary reasonable accommodation that was also provided to other, similarly situated prisoners, yet not taking it from the other prisoners; and that the acts and conduct of the BOP, it's employees and agents further constitutes a direct violation of the Plaintiff's Due Process of Law;  Plaintiff continues to suffer today and will most likely continue suffering for the remainder of her life.

Physical and mental pain and suffering from the date of her incarceration and continuing to date and into the unknown future until the medical issues that Plaintiff continues to endure can be resolved, if at all.

WHEREFORE, the Plaintiff demands a jury trial and requests judgment against the BOP, it's employees in their official capacity and individual capacity for damages on behalf of Plaintiff herein, together with attorney's fees, if this Court should appointment an attorney to Plaintiff and costs of suit in this action pursuant to 42 USC §12205 and any further relief this Court deems just and proper.

## COUNT IV
### VIOLATION OF THE EIGHTH AMENDMENT
### TO THE UNITED STATES CONSTITUTION

138.    Plaintiff adopts, realleges and reaffirms all allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein and further states as follows:

139.    This Count is a claim for deprivation of adequate shower and toilet facilities against the BOP, it's employees and agents for violating the Eighth Amendment to the United States Constitution.

140.    The BOP through its employees and agents, breached this duty of care and failed to act reasonably when it deprived Plaintiff of adequate shower and toilet facilities.

141.    Plaintiff's physical impairment of urinary and fecal incontinence constitutes a disability that interferes with a major life activity, constituting a lack of control over her bladder and bowel, as defined by 28 C.F.R. §39.130 .  ?????

142.    Plaintiff's disability required reasonable accommodation by the BOP, it's

employees and agents, which is a recipient of federal funding for programming, and which programming was denied to Plaintiff as a direct result of her disability and the refusal by the BOP, it's employees and agents to provide a reasonable accommodation therefor.

143.    As a result of Plaintiff's excruciating pain and suffering, humiliation, embarrassment and cruel and inhumane punishment, she has incurred the following damages recoverable by Plaintiff.

A.    Physical, psychological, emotional pain and suffering, trauma, humiliation, ridicule, stress, incontinence, digestive and abdominal medical issues directly resulting from the infliction of additional and unnecessary physical, psychological and emotional stress and trauma from; as well as insidious and invidious deliberate discrimination by taking away Plaintiff's necessary reasonable accommodation that was also provided to other, similarly situated prisoners, yet not taking it from the other prisoners; and that the acts and conduct of the BOP, it's employees and agents further constitutes a direct violation of the Plaintiff's Due Process of Law;  Plaintiff continues to suffer today and will most likely continue suffering for the remainder of her life.

Physical and mental pain and suffering from the date of her incarceration and continuing to date and into the unknown future until the medical issues that Plaintiff continues to endure can be resolved, if at all.

WHEREFORE, the Plaintiff demands a jury trial and requests judgment against the BOP, it's employees in their official capacity and individual capacity for damages on behalf of Plaintiff herein, together with attorney's fees, if this Court should appointment an attorney to Plaintiff and costs of suit in this action pursuant to 42 USC §12205 and any further relief this Court deems just and proper.

COUNT V

VIOLATION OF THE FOURTEENTH AMENDMENT

TO THE UNITED STATES CONSTITUTION

144.    Plaintiff adopts, realleges and reaffirms all allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein and further states as follows:

145.     This Count is a claim for deprivation of adequate shower and toilet facilities against the BOP, it's employees and agents for violating the Eighth Amendment to the United States Constitution.

146.     The BOP through its employees and agents, breached this duty of care and failed to act reasonably when it deprived Plaintiff of adequate shower and toilet facilities.

147.     Plaintiff's physical impairment of urinary and fecal incontinence constitutes a disability that interferes with a major life activity, constituting a lack of control over her bladder and bowel, as defined by 28 C.F.R. §39.130 .

148.     Plaintiff's disability required reasonable accommodation by the BOP, it's employees and agents, which is a recipient of federal funding for programming, and which programming was denied to Plaintiff as a direct result of her disability and the refusal by the BOP, it's employees and agents to provide a reasonable accommodation therefor.

149.     As a result of Plaintiff's excruciating pain and suffering, humiliation, embarrassment and cruel and inhumane punishment, she has incurred the following damages recoverable by Plaintiff.

A.      Physical, psychological, emotional pain and suffering, trauma, humiliation, ridicule, stress, incontinence, digestive and abdominal medical issues directly resulting from the infliction of additional and unnecessary physical, psychological and emotional stress and trauma from; as well as insidious and invidious deliberate discrimination by taking away Plaintiff's necessary reasonable accommodation that was also provided to other, similarly situated prisoners, yet not taking it from the other prisoners; and that the acts and conduct of the BOP, it's employees and agents further constitutes a direct violation of the Plaintiff's Due Process of Law;  Plaintiff continues to suffer today and will most likely continue suffering for the remainder of her life.

Physical and mental pain and suffering from the date of her incarceration and continuing to date and into the unknown future until the medical issues that Plaintiff continues to endure can be resolved, if at all.

WHEREFORE, the Plaintiff demands a jury trial and requests judgment against the BOP, it's employees in their official capacity and individual capacity for damages on behalf of Plaintiff

herein, together with attorney's fees, if this Court should appointment an attorney to Plaintiff and costs of suit in this action pursuant to 42 USC §12205 and any further relief this Court deems just and proper.

COUNT VI

VIOLATION OF THE REHABILITATION ACT OF 1973

29 U.S.C. §705(20)(B) (2007)

150.     Plaintiff adopts, realleges and reaffirms all allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein and further states as follows:

151.     This Count is a claim for deprivation of adequate shower and toilet facilities against the BOP, it's employees and agents for violating the Eighth Amendment to the United States Constitution.

152.     The BOP through its employees and agents, breached this duty of care and failed to act reasonably when it deprived Plaintiff of adequate shower and toilet facilities.

153.     Plaintiff's physical impairment of urinary and fecal incontinence constitutes a disability that interferes with a major life activity, constituting a lack of control over her bladder and bowel, as defined by 28 C.F.R. §39.130 .  ?????

154.     Plaintiff's disability required reasonable accommodation by the BOP, it's employees and agents, which is a recipient of federal funding for programming, and which programming was denied to Plaintiff as a direct result of her disability and the refusal by the BOP, it's employees and agents to provide a reasonable accommodation therefor.

155.     As a result of Plaintiff's excruciating pain and suffering, humiliation, embarrassment and cruel and inhumane punishment, she has incurred the following damages recoverable by Plaintiff.

A.     Physical, psychological, emotional pain and suffering, trauma, humiliation, ridicule, stress, incontinence, digestive and abdominal medical issues directly resulting from the infliction of additional and unnecessary physical, psychological and emotional stress and trauma from; as well as insidious and invidious deliberate discrimination by taking away Plaintiff's necessary reasonable accommodation that was also provided to other, similarly situated prisoners, yet not taking it from the other prisoners; and that the acts

29

and conduct of the BOP, it's employees and agents further constitutes a direct violation of the Plaintiff's Due Process of Law;  Plaintiff continues to suffer today and will most likely continue suffering for the remainder of her life.

Physical and mental pain and suffering from the date of her incarceration and continuing to date and into the unknown future until the medical issues that Plaintiff continues to endure can be resolved, if at all.

WHEREFORE, the Plaintiff demands a jury trial and requests judgment against the BOP, it's employees in their official capacity and individual capacity for damages on behalf of Plaintiff herein, together with attorney's fees, if this Court should appointment an attorney to Plaintiff and costs of suit in this action pursuant to 42 U.S.C. §12205 and any further relief this Court deems just and proper.

Plaintiff hereby respectfully requests that this Honorable Court construe her Pro se complaint liberally, and in her favor, as required by Haines v. Kerner, 404 U.S. 519, 520-521 (1972) (Pro se complaints must be held to less strigent standards than formal pleadings drafted by lawyers).

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands relief as follows:

a)      Declaratory relief tha tthe acts and conduct of the BOP, it's employees and agents herein violated the Plaintiff's Eighth Amendment Rights, Fourteenth Amendment Rights, American's with Disabilities Act, Rehabilitation Act of 1973 and Plaintiff's Right to Due Process of Law;

b)      Awarding Plaintiff Compensatory and Punitive Damages in an amount sufficient to provide compensation and deterrence as determined reasonable by the Court;

c)      The recovery of Plaintiff's attorneys' fees, if this Court should appoint an attorney to Plaintiff, pursuant to 42 U.S.C. §1988;

d)      For, osts and expenses of suit herein; and

d)      Any other and/or further relief to which Plaintiff may be entitled and which this Court deems just and equitable.

Respectfully Submitted,

Dawn Herndon, Pro se
5105 Thyme Drive
Palm Beach Gardens, FL 33418
561-667-9707

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dawn Herndon

**DEFENDANTS**

Bureau of Prisons, Jody R. Upton - Warden FMC Carswell, et al

**(b)** County of Residence of First Listed Plaintiff    Palm Beach
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Terrant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | ☐ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Injury Product Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
American's with Disabilities Act - Bivens Action - Rehabilitation Act

Brief description of cause:
Deliberate Indifference - Prison

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE

October 8, 2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

